ANDREW PAPPAS v. GEORGE PAPPAS

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 14, 1972—decided January 18, 1973

*Jackson T. King, Jr.,* for the appellant (defendant).

*Paul B. Groobert,* with whom, on the brief, were *C. George Kanabis* and *Melvin Scott,* for the appellee (plaintiff).

BOGDANSKI, J.    The plaintiff, Andrew Pappas, brought this action seeking a reconveyance of an interest in three parcels of land located in the town of East Lyme, property which, it is claimed, was conveyed to the defendant, George Pappas, by the plaintiff under an agreement wherein the defendant would reconvey the property back to the plaintiff on demand.    From a judgment rendered for the plaintiff by a state referee, exercising the powers of the Superior Court, the defendant has appealed to this court.

The defendant assigned several errors relating to the court's finding but two of these were expressly withdrawn and since he failed to brief the remainder they are treated as abandoned. *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246, cert. denied, 409

U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495; *State* v. *Benson,* 153 Conn. 209, 217, 214 A.2d 903.

The facts in this case may be stated as follows: In December, 1962, the plaintiff, Andrew Pappas, age 67, while on a visit to Greece, married a twenty-three-year-old woman. On their return to Connecticut difficulties arose in the marriage and in October, 1968, the plaintiff became aware that his wife was contemplating a divorce action against him. The plaintiff then consulted with his children, Constantine Pappas, Pauline Millaras and the defendant George Pappas, and formulated a plan to transfer his real estate to them until his marital difficulties were over and then have the property transferred back to him. Prior to the transfer, the defendant agreed to reconvey the property after the plaintiff had settled his problems with his wife. On October 23, 1968, the plaintiff transferred to his three children real estate consisting of a residence and certain commercial property having a value in excess of $100,000. After the transfer, the plaintiff continued to reside in the residence and to receive the income from the commercial property. The plaintiff had been a longtime resident of East Lyme, and had been engaged in business there for many years, acquiring ownership of substantial amounts of real estate and other assets.

On October 30, 1968, the plaintiff's wife instituted a suit for divorce and alimony. In count two of that action she sought to set aside the above-mentioned property transfer as a fraudulent conveyance. At a deposition taken in connection with the divorce action, the plaintiff testified that he transferred the real estate to his children in satisfaction of certain financial and other obligations to them. The plaintiff had, in addition, paid a convey-

ance tax on the transfer of the property indicative of consideration having passed, when in fact no consideration was ever given. The divorce action was concluded in November, 1969, wherein the plaintiff paid a lump sum alimony award to his wife of $25,000. Immediately thereafter the plaintiff demanded a reconveyance of the property from his children. The defendant's brother and sister reconveyed their interest but the defendant refused. Subsequently, the plaintiff brought this action seeking specific performance of the agreement to reconvey the property. The trial court imposed a constructive trust and ordered the defendant to convey the property to the plaintiff.

The issues pressed by the defendant in this appeal are: (1) Did the court err in lending its aid to a plaintiff who had defrauded both his wife and the court; and (2) did the court err in imposing a constructive trust where no such relief was specifically requested?

As already noted, the transfer was made one week before the divorce action was instituted. The court expressly found that "[i]t was the plaintiff's plan to transfer his real estate to his three children until his marital difficulties were over, and then have them transfer it back to him." Nevertheless, as part of his plan for the ultimate retention of this property, the plaintiff misrepresented the transfer as being absolute. The plaintiff persisted in this misrepresentation when, in connection with the divorce action, he testified falsely under oath concerning the consideration given for the transfer. This testimony, given after the initiation of the divorce action, along with the plaintiff's testimony in this case, constituted a fraud on the court.

It is a fundamental principle of equity jurispru-

dence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with "clean hands." *Murphy* v. *Dantowitz,* 142 Conn. 320, 326, 114 A.2d 194; *Gest* v. *Gest,* 117 Conn. 289, 296, 167 A. 909. The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. *Mas* v. *Coca-Cola Co.,* 163 F.2d 505, 507 (4th Cir.); *Niner* v. *Hanson,* 217 Md. 298, 309, 142 A.2d 798. It is applied not by way of punishment but on considerations that make for the advancement of right and justice. *Johnson* v. *Yellow Cab Co.,* 321 U.S. 383, 387, 64 S. Ct. 622, 88 L. Ed. 814. Thus, where the granting of relief would amount to a condonation of perjury, the court should deny relief to protect its own integrity. *Keystone Driller Co.* v. *General Excavator Co.,* 290 U.S. 240, 54 S. Ct. 146, 78 L. Ed. 293; cf. *Niner* v. *Hanson,* supra, 309-11.

In the *Keystone Driller* case, supra, the United States Supreme Court found that the plaintiff's corruption of a witness in a prior case concerning the validity of a patent was sufficient to deny the plaintiff equitable relief in a subsequent case concerning infringement of rights under the same patent because the decree in the first case was obtained by the plaintiff's fraud. Here, there is likewise a direct relationship between the plaintiff's perjury in the divorce action concerning the transfers and his attempt to regain the property in this action. There is no question that the plaintiff testified as he did to save this property from the claims of his wife, but in so doing he committed perjury in furtherance of his plan to retain ultimate possession of the property. It can thus be seen that the equity which the plaintiff now seeks in this action is directly and inseparably connected with his prior perjury.

Were we to grant him the relief requested, we would be condoning an unpurged act of fraud on the court. *Keystone Driller Co.* v. *General Excavator Co.,* supra. Consequently, the judgment of the trial court imposing a constructive trust on the property in favor of the plaintiff must be reversed.

We had occasion recently to consider a similar case; *Hieble* v. *Hieble,* 164 Conn. 56, 316 A.2d 777; wherein a mother sought a reconveyance of real property from her son, claiming that he had agreed to reconvey the property to her, on request, if she recovered from an illness. There, the relief sought was granted to the mother. In that case, however, there was no issue of perjury or fraud on the court or other indication of unclean hands on the part of the plaintiff mother as there is on the part of the plaintiff father in this case.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.