appeals involve a dispute between the claimed beneficiaries of the proceeds of a life insurance policy insuring the life of Bruno F. Kulmacz. The factual background of the dispute is as follows.
In 1972, the court, Googel, J., rendered a judgment dissolving the marriage between Lydia C. Kulmacz (Lydia) and her husband Bruno F. Kulmacz (Bruno). The court ordered Bruno to maintain "New York Life Insurance Co. policy No. 23176699 wherein *Page 472 
the named beneficiaries are also irrevocable." At the time of the dissolution the sole beneficiary of this policy was Lydia; the parties and the court, however, were under the mistaken belief that the four children of the marriage were beneficiaries.[2]
In 1975, Bruno wrote to the insurer, New York Life Insurance Company (New York Life), requesting that the beneficiaries of the policy be changed from his wife to his siblings, Jean R. Buzanoski, Irene A. Wygonoski and Edward W. Kulmacz (Bruno's siblings). New York Life placed the request in its file, but never acted upon it.
Bruno died on May 23, 1977. Both Lydia and the children, on one hand, and Bruno's siblings, on the other, made claim to the proceeds of the policy. New York Life, unsure as to whom the benefits were legally payable, refused to pay either group. As a result, Lydia and the children filed suit seeking to recover the proceeds of the policy (File No. 1149). New York Life thereafter commenced an interpleader action (File No. 1150) pursuant to General Statutes 52-484, whereby it sought to deposit the policy proceeds into court and to let the claimants prove their entitlement to the insurance proceeds.
The two actions were consolidated for trial. The trial court granted New York Life's motion for an interlocutory judgment of interpleader and ordered payment of the sum of $3626.23 to the clerk of the court.[3] Following *Page 473 
a trial on the merits, the court ruled that "[s]ince the policy named [Lydia] Kulmacz as the beneficiary the Company is ordered to turn over the net proceeds to Lydia Kulmacz and she in turn is ordered to distribute the funds to her children equally."
Bruno's siblings contend that the dissolution order that Bruno maintain the policy with his wife and children as irrevocable beneficiaries was void under the decision of Broaca v. Broaca, 181 Conn. 463,435 A.2d 1016 (1980). Broaca holds that a court may order a parent charged with child support to name his child as beneficiary of a life insurance policy to secure the continued support of the child in the event of the parent's death prior to the child reaching the age of majority. Such an order, however, may not extend beyond the child's age of majority. Thus, an order that the child be named an irrevocable beneficiary of the parent's policy is outside the jurisdiction of the court. Id., 465-66. Bruno's siblings claim, therefore, that the trial court erred in upholding the order and rendering judgment that the proceeds of the policy be paid to Lydia for distribution to the children. We disagree.
Broaca applies only to nonconsensual orders requiring a parent to maintain a life insurance policy for the benefit of his minor child, which is supplementary to or in lieu of child support and which extends beyond the age of majority of the child. Here, the trial court found that the insurance order was not intended as child support, but rather, as part of the property settlement between Bruno and Lydia. This finding was based upon the facts that at the time of the dissolution only one of the four children of the marriage was a minor and the decree provided separately for his support; that the parties assumed the children to be the irrevocable beneficiaries of the policy; and that the decision to maintain the policies was part of a property settlement agreement between Bruno and Lydia which was incorporated *Page 474 
into the judgment. Since the trial court found that the order was part of the property settlement, rather than an order of child support, and since this finding was amply supported by the evidence, we conclude that Broaca is inapplicable to the present case.
Bruno's siblings argue, however, that even if the order was valid, Bruno effectively changed beneficiaries in 1975. They contend, therefore, that the proceeds were properly payable to them and that the only remedy available to Lydia and the children was an action for breach of contract against Bruno's estate. The gravamen of this claim is that, although New York Life never acted on the request for a change of beneficiary, Bruno substantially complied with the procedure set forth in the policy and, therefore, effectuated the change.
The substantial compliance doctrine provides that "[a]s a general rule, a change of beneficiary of an insurance policy can be effected only by following the procedure prescribed by the policy. . . . There is a well-recognized exception to this rule — that a change of beneficiary is effective when the insured has done all in his power to comply with the procedure set out in the policy but has failed because of some circumstance beyond his control. . . . Proof of intention alone is not sufficient, but where the intention is manifest and substantial affirmative action has been taken by the insured to effectuate a change of beneficiary the courts generally will make the change effective even though there has not been a strict compliance with the terms of the contract." (Citations omitted.) Aetna Life Ins. Co. v. Hartford National Bank Trust Co.,146 Conn. 537, 541, 153 A.2d 448 (1959); see 2 Appleman, Insurance Law and Practice 943; Meyer, Life and Health Insurance Law 11:10. *Page 475 
Bruno's siblings take the position that since Bruno effectively changed beneficiaries, Lydia and the children no longer have a claim to the proceeds, but nonetheless have a cause of action against the estate for breach of contract. Therefore, it is contended that they are merely creditors of the estate and that their claim to the proceeds of the policy is subordinate to that of Bruno's siblings. General Statutes 38-161.[4]
This argument fails for the reason that Lydia and the children had a vested interest in the policy proceeds by virtue of the dissolution judgment. Thus, Bruno's attempt to change beneficiaries was ineffective and void.
"If sufficient consideration appears to support the insured's promise to make the claimant the beneficiary or not to change the designation so as to deprive the named beneficiary of his interest therein, the claimant takes a vested interest in the proceeds. And this is true regardless of the fact that the policy gives the insured the right to change the designation." 2 Appleman, Insurance Law and Practice 922. A settlement of property rights arising from a contemplated divorce is satisfactory consideration for the acquisition of such a vested interest in a policy designation. Hundertmark v. Hundertmark, 372 Pa. 138,93 A.2d 856 (1952); 2 Appleman, supra; 44 Am.Jur.2d 733, Insurance 1751.
Bruno's siblings contend, however, that since New York Life never received notice of the dissolution judgment, Bruno retained the power to change beneficiaries. We concede that "unless the insurer is given notice of such an agreement or of a divorce decree restricting *Page 476 
the insured's right to change the beneficiary, payment to a different designated beneficiary would probably discharge the insurer" and that "[i]n that event the person who should have been named beneficiary in accordance with the agreement would have a claim against the insured's estate for an amount equal to the insurance he or she should have received." (Emphasis added.) Meyer, Life and Health Insurance Law 11:19, citing Wright v. Wright, 276 Cal.App.2d 56, 80 Cal.Rptr. 741
(1969).
We cannot agree, however, that the failure to notify the insurer discharged the insured from his legal duty under the property settlement agreement. Moreover, where, as here, the insurer did not make payment to either claimant, we hold that it is equitable and proper to award the proceeds to the party legally entitled to them, rather than to another and thereby necessitating further litigation against the estate.
Bruno's siblings finally contend that Lydia and the children should be barred from recovery under the doctrine of "unclean hands," which provides that "for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with `clean hands.'" Pappas v. Pappas, 164 Conn. 242, 246,320 A.2d 809 (1973). The gravamen of this claim is that: (1) Lydia or the children failed to inform the insurer that the children were designated irrevocable beneficiaries by the judgment of dissolution; and (2) upon discovering that the children had not been designated beneficiaries as the parties had assumed, Lydia did not seek to cite Bruno for contempt of court for failure to comply with the court's order. Therefore, they assert that she and the children should not prevail. This claim has no merit.
"The clean hands doctrine is applied not for the protection of the parties but for the protection of *Page 477 
the court. . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice." Id.
Lydia committed no wrong which would preclude her from recovering that which she was legally entitled to receive. At best she and the children were passive and assumed that the former husband and father would honor his agreement and the dissolution judgment of the court. This, in our opinion, does not constitute "unclean hands."
 There is no error.
In this opinion DALY and COVELLO, Js., concurred.