[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 7958-N
The plaintiff Gateway Bank [hereafter "Gateway"] has brought an action seeking foreclosure and monetary damages against Racquetball Spa, inc. [hereafter [the "Spa"], Paul C. Graham [hereafter "Graham"], Margaret A. Graham and others. In its three count complaint, Gateway alleged that on November 13, 1978 and August 21, 1980, respectively, it entered into two loan agreements with the Spa for the principal sums of $500,000 and $112,000, with interest. Defendants Graham and Margaret A. Graham guaranteed the 1978 note and secured the guaranty with mortgages on several properties. Graham guaranteed the 1980 note. On September 30, 1983, Gateway and the Spa modified the 1978 and 1980 loan agreements and entered into a third loan agreement for the principal sum of $20,000, with interest, which Graham also guaranteed. Gateway further alleged that the installments of principal and interest due have not been paid and it exercised its option under each note to declare the entire outstanding principal amount, and accrued interest, on each note due and payable. As to the first count, which deals with the 1978 CT Page 7958-O note, Gateway seeks a judgment of strict foreclosure of the mortgage, immediate possession of the mortgaged premises, and a deficiency judgment against Graham. As to the remaining counts founded on the 1980 and 1983 notes, Gateway seeks money damages, as well as costs, an order for weekly payments against Graham, and any other relief that the court deems proper.
On May 13, 1993, the Spa and Graham [hereafter "defendants"] filed an answer, special defenses, and counterclaims. In their answer, the defendants admitted the execution and guarantee of each note, and denied all the other substantive allegations of Gateway's complaint. The special defenses and counterclaims are premised on defendants' allegation that Gateway refused to vary the rate of interest in accordance with the terms of the notes and modification agreements.
On May 28, 1993, Gateway filed a motion to strike (#108) and supporting memorandum of law (#109) directed at the defendants' third special defense and first counterclaim. The third special defense alleges that the "plaintiff is estopped from foreclosing and collecting because of unclean hands." The first CT Page 7958-P counterclaim alleges a violation of the Connecticut Unfair Trade Practices Act, General Statutes 42-110, et seq. (CUTPA). Gateway has moved to strike the third special defense on the ground that the doctrine of unclean hands does not constitute a defense to foreclosure. Its motion to strike the first counterclaim is grounded on the claim that CUTPA does not apply to banks and, alternatively, that if applicable, CUTPA is limited to consumer, but not commercial, transactions. On June 15, 1993, the Spa and Graham filed a memorandum in opposition (#111) to the motion to strike.
"A motion to strike challenges the legal sufficiency of a pleading. Practice Book 152." Mingachos v. CBS, Inc., 196 Conn. 91,108, 491 A.2d 368 (1985). A motion to strike is properly used to contest the legal sufficiency of any answer including any special defense contained therein as well as the legal sufficiency of any counterclaim. Practice Book 152(5). A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis in original.) Mingachos v. CBS, Inc., 196 Conn. at 108. "In deciding upon a motion to strike . . . , a trial court must take the facts to CT Page 7958-Q be those alleged in the [pleadings] . . . and `cannot be aided by the assumption of any facts not therein alleged.'" Liljedahl Bros. Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149 (1990).
The court must construe the defense and the counterclaim "in the manner most favorable to sustaining [their] legal sufficiency." Bouchard v. People's Bank, 219 Conn. 465, 471, 594 A.2d 1
(1991), citing Michaud v. Wawruck, 209 Conn. 407, 408,551 A.2d 738 (1988). Where the facts provable under the allegations would support a defense or a cause of action, the motion to strike must be denied. Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989).
Gateway correctly asserts that the third special defense, premised on a claim of "unclean hands," is a legally insufficient defense to foreclosure. The defense of unclean hands to a mortgage foreclosure has generally been disallowed in this state. See e.g., Northeast Savings. F.A. v. Dunst, 7 CSCR 527 (April 15, 1992) (Nigro, J.); New England Savings Bank v. High Ridge, Inc.,5 Conn. L. Rptr. 110, 111 (Nov. 4, 1991) (Leuba, J.). Furthermore, the "clean hands doctrine is applied not for the protection of the parties but for the CT Page 7958-R protection of the court." Pappas v. Pappas, 164 Conn. 242, 246,320 A.2d 809 (1973). There is nothing contained in the allegations of the third special defense that suggests that the equities in this case require the court to apply the doctrine of clean hands with respect to any aspect of Gateway's cause of action. Accordingly, the motion to strike the third special defense is granted.
Gateway cannot, however, prevail on the motion to strike the first counterclaim which asserts a cause of action under CUTPA premised on Gateway's failure and refusal to respond to the defendants oral and written requests seeking adjustment of the notes' interest rates pursuant alleged agreements among the parties. Gateway's principal argument is that CUTPA does not apply to banks since they are subject to pervasive regulation. See Connelly v. Housing Authority of the City of New Haven, 213 Conn. 354,567 A.2d 1212 (1990). This argument has now been rejected by the majority of superior court judges considering the issue. See e.g., Fosdick Corp. v. Shawmut Bank, 9 Conn. L. Rptr. 468, 469 (Aug. 30, 1993) (Gray, J.) and cases cited therein at 469; Arzonetti d/b/a Halcyon Holdings, 9 Conn. L. Rptr. 372, 373-74 (Aug. 9, 1993)(Dranginis, J.); Southington Savings Bank v. Village CT Page 7958-S Builders. Inc., 7 Conn. L. Rptr. 586, 587 (Berger, J.); Connecticut National Bank v. Alliance Petroleum Industries. Inc.,6 Conn. L. Rptr. 529, 531 (1992)(Hennessey, J.); Connecticut National Bank v. Gager, 4 Conn. L. Rptr. 7, 8 (1992) (Leuba, J.); Economic Development Associates v. Citytrust,3 Conn. L. Rptr. 517, 519-20 (1991)(Dranginis, J.); Financial Federal Savings Bank v. Breen, 2 Conn. L. Rptr. 665, 667 (1990) (Freed, J.). This court agrees with the reasoning contained in these decisions and finds CUTPA applicable to banks.
Gateway has alternatively argued that if the court should find CUTPA applicable to banks, the act does not apply to commercial lending transactions. Gateway contends that since its loans' were to the Spa, a corporation, "they are obviously commercial in nature" and do not fall within CUTPA's purpose as a "consumer protection statute."
Gateway's reading of the act is far too narrow and does not comport with the act's legislated remedial purposes. Conn. Gen. Stat. 42-110b(d). See Fosdick Corp. v. Shawmut Bank,9 Conn. L. Rptr. at 468; Conning Corp v. Davenport Group, Conn. L. CT Page 7958-T Rptr. 340, 341 (1992) (Mottolese, J.); Old Town Common Condo Association. Inc. v. O. Corp., 2 Conn. L. Reptr. 597 (1990) (Thim, J.) Juris Associates Limited Partnership v. Bank of Boston Connecticut,1 Conn. L. Rptr. 740, 741 (1990)(Ripley), J.). Numerous courts have applied CUTPA to banks involved in similar commercial lending transactions without even addressing the issue. See e.g., Southington Savings Bank v. Village Builders Developers. Inc., 7 Conn. L. Rptr. at 586; Connecticut National Bank v. Alliance Petroleum Industries. Inc., 6 Conn. L. Rptr. at 529; Connecticut National Bank v. Gager, 4 Conn. L. Rptr. at 7; Economic Development Associates v. Cititrust,3 Conn. L. Rptr. at 517; Old Town Condo Association, Inc. v. O. Corporation,2 Conn. L. Rptr. 597; Juris Associates Limited Partnership v. Bank of Boston Connecticut, 1 Conn. L. Rptr. at 741.
CUTPA is not limited to consumer injury, McLaughlin Ford. Inc. v. Ford Motor Co., 192 Conn. 558, 566-67, 473 A.2d 1185
(1984); Conning Corp v. Davenport Group, 6 Conn. L. Rptr. at 342, although "a claimant under CUTPA must possess at least some type of consumer relationship with the party who allegedly caused harm to [the claimant]." Jackson v. R. G. Whipple. Inc., CT Page 7958-U225 Conn. 705, 727, ___ A.2d ___ (1993). The granting of loans and mortgages, whether to individuals or commercial customers, is clearly a consumer-oriented activity which is subject to the provisions of CUTPA. See Connecticut National Bank v. Alliance Petroleum Industries, Inc., 6 Conn. L. Rptr. at 531. For the purposes of this motion to strike, viewing the allegations of the counterclaim in the light most favorable to the nonmovants, the court finds the defendants to be consumers in these transactions with Gateway. See First Constitution v. Booker,4 Conn. L. Rptr. 325, 326 (1991) (Karazin, J.).
Our Supreme Court has adopted the "cigarette rule" FTC v., Sperry Hutchinson Co., 405 U.S. 223, 244-45, n. 5,92 S.Ct. 898,31 L.Ed.2d 170 (1972), to determine whether a practice violates CUTPA. E.g., Cheshire Mortgage Service. Inc. v. Montes,223 Conn. 80, 105, ___ A.2d ___ (1992). This rule contains three criteria, all of which do not have to be satisfied: whether the unfair practice (1) "offends public policy to the extent it constitutes a breach of established concepts of fairness," Id. at 107, (2) "is immoral, unethical, oppressive or unscrupulous," Id. at 112, and (3) whether it caused substantial injury to consumers, competitors CT Page 7958-V or other businessmen. Id. at 106. The allegations of the first counterclaim, construed in the light most favorable to the defendants, suffice to provide the defendants with an opportunity to prove the plaintiff's actions met the requisite degree of unfairness. Accordingly, the motion to strike the first counterclaim is denied.
Lager, J.