[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Divorced in 1983, the parties filed contempt motions in May 1995, seeking to enforce various provisions of the judgment.
The plaintiff, Mr. Dayharsh, sought to enforce paragraph 5.2 of the parties' agreement which became the court's judgment at CT Page 14515 the time of the divorce, and required that the former family home be "promptly offered for sale and sold" as of June 30, 1992. The net proceeds of the sale are to be divided equally between the parties. That aspect of Mr. Dayharsh's motion was resolved by agreement of the parties, which became an order of the court on August 15, 1995.
Mr. Dayharsh also sought to have the defendant, Mrs. Dayharsh, held in contempt for making claims upon him for payment of certain expenses which are dealt with in the judgment. Testimony at the hearing on the parties' motions showed that these claims had been forwarded to Mr. Dayharsh by counsel for Mrs. Dayharsh on at least one occasion prior to the filing of his contempt motion, and they were incorporated in a contempt motion filed by Mrs. Dayharsh on May 19, 1995. Whatever the court's ultimate determination on Mrs. Dayharsh's claims, there is no merit to Mr. Dayharsh's position that she is in contempt of the dissolution judgment in putting forth those claims, and his motion is denied in that respect.
Mrs. Dayharsh's contempt motion sought to enforce certain obligations Mr. Dayharsh has to pay expenses related to the former family home; viz., one-half of the mortgage, real estate taxes, fire and liability insurance and "necessary capital improvements" made to the property. In response, Mr. Dayharsh raises the claim of "unclean hands" on the part of Mrs. Dayharsh. In addition, because several of the claimed "necessary capital improvements" were made during the 1980's, and no formal claim had been made for Mr. Dayharsh's 50% share until May 1995, the court required both parties to brief and argue the application of the concept of laches to Mrs. Dayharsh's 1995 claim for payment.
A. Mr. Dayharsh's Defenses
 It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with "clean hands." . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice. . . .
Pappas v. Pappas, 164 Conn. 242, 245-46 (1973). CT Page 14516
Mrs. Dayharsh's "unclean hands", according to Mr. Dayharsh, arise out of her failure to cooperate in efforts to sell the former family home promptly after June 30, 1992. This failure took the form of insisting on list prices well above market value, failure to make the house available for showings and failure to keep the house in a marketable condition. As to the last two claims, there was no evidence to support them. As to the first claim, the evidence showed that Mr. Dayharsh had signed each of the listing agreements in which the allegedly unreasonable prices were contained. While he testified that both he and various real estate agents advised Mrs. Dayharsh that the house was priced above market, the fact remains that he at least tacitly acquiesced in the continuing listings at those prices. Moreover, there was a complete absence of proof that the property would have sold at any lower price during the period in question, i.e., July 1992 — May 1995.
Thus, whatever actions Mrs. Dayharsh allegedly took to frustrate sale of the property were acquiesced in by Mr. Dayharsh, and there is no proof that, had she acted differently, the property would have sold, and the continuing expenses for mortgage payments, real estate taxes and fire and liability insurance been obviated.
Looking at Mr. Dayharsh's conduct, the court observes that he ceased making all payments for fire and liability insurance and real estate taxes immediately on July 1, 1992 when the judgment required the property to be offered for sale and never resumed making those payments even after the house was listed for sale pursuant to the agreement of the parties of August 15, 1995. It appears to the court that Mr. Dayharsh made a decision to take advantage of the failure of the house to sell to avoid his obligations under the judgment.
"The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in willful misconduct with regard to the matter in litigation." DeCecco v.Beach, 174 Conn. 29, 35 (1977). "Under this maxim, any willful act in regard to the matter in litigation, which would be condemned and pronounced wrongful by honest and fair minded men will be sufficient to make the hands of the applicant unclean."Boretz v. Segar, 124 Conn. 320, 324 (1938). The trial court enjoys broad discretion in determining whether the promotion of public policy and preservation of the courts' integrity dictate CT Page 14517 that the clean hands doctrine be invoked. DeCecco v. Beach, op. cit. supra.
Applying these principles to the facts of this case leads the court to the conclusion that the requirement that a litigant have "clean hands" before seeking equitable relief does not bar Mrs. Dayharsh's claims. Unlike cases in which the doctrine has been applied to defeat equitable claims, there is no evidence of perjury or fraud on Mrs. Dayharsh's part. Compare Pappas v.Pappas, supra, with Cohen v. Cohen, 182 Conn. 193 (1980). The worst that can be said is that she did not enthusiastically pursue the sale of the former family home in which she and the parties' children still resided in 1992. While this course of conduct on her part cost both of the parties money they might not otherwise have expended, it does not rise to the level of the "unclean hands" that bar equitable relief.
Similarly, the court does not believe that the laches doctrine precludes relief for Mrs. Dayharsh. Laches consists of two elements. First, there must have been a delay that was inexcusable; second, that delay must have prejudiced Mr. Dayharsh. Kurzatkowski v. Kurzatkowski, 142 Conn. 680 (1955). Mrs. Dayharsh's delay, such as it is, in seeking satisfaction from Mr. Dayharsh for the cost of claimed "necessary capital improvements" is understandable in light of the provision of the judgment that "in the event either party pays more than 50% of any such expenditure he or she shall be reimbursed from the proceeds of the sale of the property for such amount in excess of 50%" whenever that sale should occur. The same is true of the 50% payments due from Mr. Dayharsh for the fire and liability insurance and the real estate taxes. With regard to Mr. Dayharsh's share of the mortgage payments, his obligation to pay one-half of the principal and interest installments accrued, according to Mrs. Dayharsh, in October 1991, when her mother vacated the apartment in the former family home and ceased making rental payments to her. Waiting until 1995 to make a claim for those payments does not strike the court as "inexcusable" delay, nor was Mr. Dayharsh prejudiced in any way by this delay. In fact, it could be argued that he was benefited by the use of the money which he would have otherwise had to pay on a monthly basis to Mrs. Dayharsh for his share of the mortgage payments.
Mr. Dayharsh claims prejudice under both the "clean hands" and laches doctrines based upon his interest payments on a 1984 home equity loan, secured by the former family home. Had the CT Page 14518 house been sold "promptly" after June 30, 1992, that obligation of his would have been satisfied, and the interest payments obviated. As indicated above, however, there is very thin evidence that any conduct of Mrs. Dayharsh's delayed the sale of the home, or, if it did, by what period of time. This makes it impossible to reckon what damages, if any, Mr. Dayharsh suffered by virtue of his continuing payment of the interest charges on this home equity loan.
B. Mrs. Dayharsh's Claims
1. Principal and interest payments
Paragraph 5.3 of the judgment provides that all rental income from a three-room apartment in the former family home is to be collected by Mrs. Dayharsh and applied to the mortgage payments on that property. "In the event said apartment is vacant, husband shall pay one-half of the principal and interest installments due under said mortgage during the period of such vacancy's. It is undisputed between the parties that the apartment has been vacant since October 1991 when Mrs. Dayharsh's mother vacated the premises and moved to a nursing home. It was never rented again, and Mrs. Dayharsh claims Mr. Dayharsh's 50% share of the mortgage payments of $230.68 monthly since that time, a total of $5,767. It is also undisputed that the apartment was rented throughout the parties' marriage.
There was some discrepancy in the testimony as to whether or not the apartment is in condition to be rented because of some structural changes which Mr. Dayharsh claims were made to the premises by Mrs. Dayharsh, a claim that is disputed. Mrs. Dayharsh also claimed that the apartment could not be rented because it is a non-conforming use. Although no non-hearsay evidence of this was presented to the court, Mr. Dayharsh agreed that the property was not rentable because it is a non-conforming use and placed in evidence as Exhibit 2 an appraisal of the property in which the appraiser opines that "current zoning regulations do not allow the renting of this apartment because the lot size does not meet minimum requirements for a two family home."
Therefore, the court will conclude that the apartment is not in rentable condition and has not been so since it was last vacated in October 1991. The court finds nothing inequitable in requiring Mr. Dayharsh to pay his 50% share of the principal and CT Page 14519 interest installments which have accrued since that date inasmuch as he is still a 50% owner of the property and will receive 50% of the net proceeds of the sale. This is so even if Mrs. Dayharsh did, as Mr. Dayharsh testified, tell him not to worry about those payments at the time her mother moved out.
2. Fire and liability insurance; real estate taxes
Paragraph 5.4 of the judgment requires Mr. Dayharsh to pay 50% of the fire and liability insurance and the real estate taxes on the former family home, and he did so until July 1992. According to his testimony, he stopped at that time because Mrs. Dayharsh was not cooperating in the marketing of the property for sale.
The court has already concluded that the doctrine of "unclean hands" and the concept of laches do not preclude Mrs. Dayharsh's enforcement of these obligations, and there is no other equitable principle that would allow one party to a divorce judgment to cease complying with his obligations because another party is not complying with hers. It should be noted that it was not until May 1995 that Mr. Dayharsh brought the appropriate action to enforce Mrs. Dayharsh's obligations under the paragraph providing for the sale of the former family home. Therefore, the court finds that Mr. Dayharsh is liable for one half of the fire and liability insurance premiums paid since July 1992, except for the premiums paid in the 1995-96 policy year, a period for which Mrs. Dayharsh secured different and more expensive insurance than had been previously in force on the premises. Mr. Dayharsh is also responsible for fifty percent of the real estate taxes assessed against the property since July 1, 1992.
3. "Necessary capital improvements"
Paragraph 5.4 of the judgment also makes Mrs. Dayharsh responsible for maintaining the former family home in good condition and paying all costs and expenses for the repair and maintenance thereof, except that Mr. Dayharsh shall pay one-half of "necessary capital improvements", including but not limited to certain specified types of improvements. Mr. Dayharsh's obligation, however, applies only if he has approved of those necessary capital improvements, "which approval shall not be unreasonably withheld". The threshold issue governing Mrs. Dayharsh's right to recover for a list of necessary capital improvements totalling over $17,000 between 1984 and 1991 is CT Page 14520 whether or not Mr. Dayharsh approved of those improvements. The court concludes that, except for the storms and screens replaced in 1984 at a cost of $4,196.40, he did not.
In the case of the storms and screens Mr. Dayharsh signed a loan application in a specific amount for the explicit purpose of making such improvements, and the court accepts this as evidence of his approval of this improvement. As to all of the other improvements, the court accepts Mr. Dayharsh's testimony that the nature of the communications between him and Mrs. Dayharsh was more in the nature of notice to him that improvements were going to be made rather than a genuine request for his approval. The court believes that "approval" in this context contemplates more than notice and tacit acquiescence. It requires an affirmation by Mr. Dayharsh, after consultation and an opportunity for him to participate in the decision-making process. Otherwise, there would be no point to the provision in the judgment that his approval was not to be "unreasonably withheld". The court assesses the conversations, such as they were, between Mr. and Mrs. Dayharsh on these matters as not providing Mr. Dayharsh with much opportunity to withhold his approval reasonably or unreasonably.
Mrs. Dayharsh, to support her version of the conversations with Mr. Dayharsh, called one of the parties' daughters and a best friend of the daughter's, who had regarded Mr. Dayharsh as a surrogate father. This regrettable practice availed her nothing since the court discounted completely the testimony of both the daughter and her friend since the former was so obviously biased against Mr. Dayharsh, resenting his efforts to effect the sale of the former family home.
The court concludes that Mr. Dayharsh's only obligation under the "necessary capital improvements" provision of the dissolution judgment is to pay one-half of the cost of the storm and screen upgrade in the amount of $2,098.
The court finds that Mr. Dayharsh did not comply with the provisions of the court's order concerning payments of the principal and interest on the mortgage, fire and liability insurance and real estate taxes, and that his non-compliance was willful and, therefore, a contempt of the court's order. Instead of pursuing the court's enforcement mechanisms for Mrs. Dayharsh's claimed failure to comply with her obligations, Mr. Dayharsh simply ceased paying on obligations that were clearly CT Page 14521 his under the judgment. With regard to the obligation of Mr. Dayharsh to pay 50% of the cost of "necessary capital improvements", the court finds that he is not in compliance with that order as far as the storm and screen upgrade is concerned, but that his non-compliance was not willful and, therefore, not in contempt of the court's order.
The court further finds that Mr. Dayharsh's total obligation on the real estate taxes for the years 1992-93 through the first payment due for 1995-96 is $7,890.[1] In addition, Mr. Dayharsh is liable for payments totalling $5,767 for his share of the principal and interest on the mortgage, $1,207 for his share of the fire and liability insurance and $2,098 for his share of the storm and screen upgrade. When all of these charges are added together, they total $16,962. This represents the reimbursement which is due to Mrs. Dayharsh from the proceeds of the sale of the former family home, whenever that should occur, prior to the division on an equal basis of the net proceeds of sale.
It is the further order of the court that Mr. Dayharsh begin payment of his 50% share of the principal and interest payment on the mortgage with the month of December 1995, and that he pay his share of the real estate taxes due in January 1996 and on each due date thereafter until the property is sold.
/s/ Shortall, J.