IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 16, 2004 Session

## ANNETTE MARIE THOMPSON BULICK v. RICHARD LEE THOMPSON, JR.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 151538 R.D.     The Honorable D'Army Bailey, Judge**

---

**No. W2004-00816-COA-R3-CV - Filed January 18, 2005**

---

Father/Appellant filed a Petition in Opposition to Mother's Relocation with the Minor Child. Trial court found that parents did not exercise substantially equal parenting time under the Parental Relocation Statute, T.C.A. § 36-6-108, and allowed Mother/Appellee to move with the minor child. Father appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. joined and HOLLY M. KIRBY, J. filed a Separate Concurrence.

Gail R. Sevier and Vicki J. Singh of Memphis for Appellant, Richard Lee Thompson, Jr.

S. Denise McCrary and Mitzi C. Johnson of Memphis for Appellee, Annette Marie Thompson Bulick

### OPINION

Annette Marie Thompson Bulick ("Mother," "Plaintiff," or "Appellee") and Richard Lee Thompson, Jr. ("Father," "Defendant," or "Appellant") were divorced pursuant to a Final Decree of Divorce (the "Decree") entered on June 26, 1996. One child, Anna Kristan Thompson (d.o.b. 8/3/93) was born to this marriage. The Decree incorporated by reference the parties' written Marital Dissolution Agreement ("MDA").

The MDA provides that it is in the best interest of the minor child for Mother to have the final decision making authority for the child's care, supervision and guidance on a daily basis after consulting with Father. The MDA provides that Mother will have the physical custody of the minor

child and that Father will enjoy reasonable and liberal visitation rights. The Decree provides that Mother will have "the exclusive care, custody and control" of the minor child.[1]

The MDA sets forth the specific parenting time of the parties with the minor child as follows:

> (3) CHILD VISITATION: Visitation will be Saturday, Sunday, Monday, Tuesday, Wednesday nights with WIFE, and Thursday and Friday nights with the HUSBAND. HUSBAND shall bring the child back Saturday in the late afternoon. If either parent needs to leave town, then the other parent will care for the child. Each parent gets to take the child on vacation with them.
>> For the Thanksgiving holiday, HUSBAND shall have the child for the noon meal and return her to WIFE for late afternoon meal.
>> For Christmas holiday, HUSBAND shall pick up the child at noon on Christmas and return her to WIFE either that evening or the morning following Christmas.

The time designated in the MDA equates to 105 nights per year with Father (or 28% of the parenting time for Father) and 260 nights (or 71.3% of the parenting time) with Mother.

The parenting time set forth in the MDA was initially exercised by the parties from the time of their divorce in 1996 until approximately 1999 or 2000, when the child started first grade. At that time, the parties altered the parenting schedule to allow Father additional time with the child. Specifically, Mother allowed Father to enjoy an additional Saturday overnight on alternating weekends, until around May or June 2003 (just before Father filed his Petition in Opposition to Mother's Relocation, see *infra*). The parties agree that, during the extended visitation, Father was spending five (5) nights out of fourteen (14) nights every two weeks with the child. This equates to Father spending 35.7% of the time with the child and Mother spending 64.3% of the time with the child. Thus, for the past three or four years post-divorce, Father enjoyed parenting time with the child on Thursday and Friday nights in one week, and then Thursday, Friday and Saturday nights in the next week.

On or about February 2003, Father relocated to Olive Branch, Mississippi, where he currently resides.[2] Father is remarried and has two additional children. Mother is also remarried and has two additional children with her current husband.

---

[1] The Decree also sets Father's child support obligation at $585.00 per month. This obligation was modified to $1,060.00 per month by Consent Order entered April 12, 2000.

[2] No relocation letter was sent by Father pursuant to T.C.A. § 36-6-108, and no Petitions were ever filed regarding Father's relocation. Thus, Mother submits that Father is improperly spending any time with the child in the State of Mississippi and is guilty of the doctrine of unclean hands in objecting to Mother's relocation having so violated Tennessee law. We will discuss this issue, *infra*.

Mother's current husband received a promotion in his job, which required him to relocate from Memphis, Tennessee to White Pine, Tennessee. White Pine, Tennessee is an approximate six (6) hour drive from Memphis, Tennessee. Father admits that Mother told him of her plans to relocate prior to telling the parties' minor child. Thereafter, Father, Mother and their current spouses all told the minor child together of the relocation. Mother sent a relocation letter to Father pursuant to T.C.A. § 36-6-108, which Father received on or about May 23, 2003.

On June 5, 2003, Father filed "Father's Petition in Opposition to Mother's Relocation with the Minor Child." On July 18, 2003, Father filed a "Motion Appointing Guardian Ad Litem for Minor Child." On July 24, 2003, the trial court entered a "Consent Order Referring Matter for Rule 31 Mediation." On July 25, 2003, Mother filed her "Response to Father's Petition in Opposition to Mother's Relocation with the Minor Child and Counter-Petition for Parental Relocation, Increase in Child Support and Payment of Child Support and Medical Expense Arrearage." On that same date, Mother also filed her proposed Permanent Parenting Plan.

On July 25, 2003, Father filed "Father's Petition for Temporary Injunction and Appointment of Guardian Ad Litem," in which he sought, *inter alia*, an injunction against Mother prohibiting her from relocating with the minor child without the court's permission. The Order on Father's "Petition for Temporary Injunction and Appointment of Guardian Ad Litem" was entered by interchange on August 5, 2003. That Order enjoined Mother from relocating with the child until expressly authorized by the court and reserved the request for the appointment of a guardian ad litem.

The trial court requested that counsel for both sides submit memoranda of law concerning the issue of "substantially equal parenting time" under T.C.A. § 36-6-108(c). These memoranda were filed and the trial court heard argument on September 16, 2003. On September 22, 2003, an "Order on Oral Motion in Limine of the Court" was entered, wherein the trial court found that "Father does not spend 'substantially equal' parenting time with the parties' minor child pursuant to TCA 36-6-108(c); that a "Guardian ad Litem shall not be appointed to assist the Court in this cause;" and that the "Order on Father's Petition for Temporary Injunction and Appointment of Guardian ad Litem shall be lifted and Mother shall be allowed to remove the child from Shelby County, Tennessee to reside in Morristown, Tennessee pending the final hearing in this cause."

On December 12, 2003, a hearing was held regarding certain visitation and child support issues. A Permanent Parenting Plan was entered on January 20, 2004. On March 10, 2004, the trial court entered its "Final Order on Father's Petition in Opposition to Mother's Relocation with the Minor Child; and Mother's Counter-Petition for Parental Relocation, Increase in Child Support, Payment of Child Support and Medical Expense Arrearage" (the "Final Order").

Father filed his Notice of Appeal on March 24, 2004. On March 29, 2004, Father filed a "Designation of the Depositions of Richard Lee Thompson, Jr. and Annette Marie Thompson Bulick."

On May 10, 2004, a "Consent Order Substituting Counsel"was entered wherein S. Denise McCrary was substituted for Dennis Sossamon as counsel for Mother. Likewise, on May 10, 2004, Mother filed a "Designation of the Deposition of Robert Bulick."[3]

On May 14, 2004, Father filed a "Motion to Strike or Delete Deposition of Robert Bulick from Appellate Record." On May 25, 2004, Mother filed her Response to this Motion. On June 28, 2004, a hearing was held before the trial court on Father's "Motion to Strike or Delete Deposition of Robert Bulick from Appellate Record." On July 8, 2004, an "Order on Motion to Strike or Delete Deposition of Robert Bulick from Appellate Record,," wherein the trial court ordered that the deposition of Robert Bulick "be stricken or deleted from the Appellate Record."

Father raises three (3) issues for review as set out in his brief:

> I. Whether the Trial Court erred in its preliminary determination that the parties did not spend "substantially equal" time with the minor child, as set out in Tennessee Code Annotated § 36-6-108(c).
>
> > A. The Trial Court erred as a matter of law in its insistence upon a numerical percentage rather than upon a reasonable statutory construction of "substantially equal" under Tennessee Code Annotated § 36-6-108(c).
> >
> > B. The Trial Court erred as a matter of law in relying on *Aaby v. Strange* rather than on the Parental Relocation Statute.
> >
> > C. The Trial Court erred in failing to recognize public policy considerations that mandate a liberal construction of the "substantially equal" term.
>
> II. Whether the Trial Court erred in denying Father's motion for appointment of guardian ad litem.

Mother raises one additional issue as stated in her brief: "Whether the Appellant comes into

---

[3] Concerning additional filings with this Court: On May 11, 2004, Mother filed a "Motion for Extension of Time" and supporting Affidavit and, on May 13, 2004, this Court entered an Order granting Mother's Motion and allowing her ten additional days to review the record. On May 25, 2004, this Court entered an Order allowing Appellee and extension of time, through June 4, 2004, to file and serve a designation of additional parts to be included in the appellate record. On May 25, 2004, this Court entered an Order granting an extension of time, through June 22, 2004, for the clerk of the trial court to complete the appellate record.

Court with unclean hands such that his request for relief should be denied." We will first address Mother's issue concerning unclean hands.

**Unclean Hands**

Mother contends that Father is guilty of unclean hands in that Father failed to provide notice of his relocation to Olive Branch, Mississippi, as required by T.C.A. § 36-6-108 (2001):

> (a) If a parent who is spending intervals of time with a child desires to relocate outside the state or more than one hundred (100) miles from the other parent within the state, the relocating parent shall send a notice to the other parent at the other parent's last known address by registered or certified mail....[4]

The doctrine of unclean hands has been described as follows:

> The principle is general, and is one of the maxims of the Court, that he who comes into a Court of Equity asking its interposition in his behalf, must come with clean hands; and if it appear from the case made by him, or by his adversary, that he has himself been guilty of unconscientious, inequitable, or immoral conduct, in and about the same matters whereof he complains of his adversary, or if his claim to relief grows out of, or depends upon, or is inseparably connected with his own prior fraud, he will be repelled at the threshold of the court.

***Continental Bankers Life Ins. Co. v. Simmons***, 561 S.W.2d 460, 465 (Tenn.Ct.App.1977) (citing ***C.F. Simmons Medicine Co. v. Mansfield Drug Co.***, 23 S.W. 165 (Tenn.1893)). The doctrine of unclean hands is applied for the protection of the court, not the protection of the parties. ***Inman v.***

---

[4] Mother specifically raised this issue at the hearing on this matter, to wit:

> MR. SOSSAMON [attorney for Mother]: And if I may, one last thing, and I'll try to sit down and not bother Your Honor any more, is the one thing that–I pointed in my brief, and I wish I could have found some case law that said it's an absolute estoppel, but this gentleman [Mr. Thompson] doesn't even live in this state any more, but he's trying to prevent her [Ms. Bulick] from moving to another part of this state. He doesn't even reside in this state.
>
> THE COURT: Well, I read that in your deposition, but I didn't address that because I don't–
>
> MR. SOSSAMON: Today was just a substantially equal question. I know that. But I just had to bring that up because I sure wish there was some case about estoppel of telling someone not to do something that you yourself have already done.

*Inman*, 1989 WL 122984, at *4 (Tenn.Ct.App. Oct. 18, 1989), rev'd on other grounds, 811 S.W .2d 870 (Tenn.1991) (citing *Pappas v. Pappas*, 320 A.2d 809, 811 (1973)).

Generally, litigants found to have unclean hands will "be repelled at the threshold of the court." *Continental Bankers*, 561 S.W.2d at 465 (citations omitted). In proceedings where the welfare of a child is concerned, however, the protection of the child is the focal point. " '[U]nclean hands' does not necessarily repel a petition regarding the welfare of a child which predominates over any offended dignity of the court." *Haynes v. Haynes*, 904 S.W.2d 118, 120 (Tenn.Ct.App.1995) (citing *Strube v. Strube*, 379 S.W.2d 44, 48 (Tenn.Ct.App.1963)). The best interest of the child is the utmost concern. *Johnson v. Johnson*, No. M2000-00358-COA-R3-CV, 2001 WL980737, at *7 (Tenn.Ct.App. Aug. 28, 2001). This Court has previously stated:

> [If an] appellant comes into court with unclean hands [this] might in some cases be sufficient justification for denying a hearing to appellant. As was said by Mr. Justice Cook, however, speaking for the Supreme Court in *State ex rel. Daugherty v. Rose*, 167 Tenn. 489, 71 S.W.(2d) 685, "When such proceedings involve the custody of children, they are not decided according to the strict legal right of the petitioner, but are dependent on the child's welfare."

*Strube*, 379 S.W.2d at 48.

It is undisputed that Mr. Thompson failed to comply with the statute. However, even if we assume, *arguendo*, that this omission is unclean hands (which we do not), the ultimate issue in this case is the welfare and best interest of this minor child. As discussed above, in Tennessee, the doctrine of "unclean hands" does not necessarily repel a petition regarding the welfare of a child because the welfare of the child predominates over any offended dignity of the court. Given the nature of this hearing, we believe that the trial court properly allowed the hearing to proceed despite the allegation of "unclean hands."

**Substantially Equal Time**

T.C.A. § 36-6-108 (2001) (the "Relocation Statute") governs parental relocation determinations and reads, in relevant part, as follows:

> (c) If the parents are actually spending substantially equal intervals of time with the child and the relocating parent seeks to move with the child, the other parent may, within thirty (30) days of receipt of notice, file a petition in opposition to removal of the child. No presumption in favor of or against the request to relocate with the child shall arise. The court shall determine whether or not to permit relocation of the child based upon the best interests of the child. The

court shall consider all relevant factors including the following where applicable:

(1) The extent to which visitation rights have been allowed and exercised;

(2) Whether the primary residential parent, once out the jurisdiction, is likely to comply with any new visitation arrangement;

(3) the love, affection and emotional ties existing between the parents and child;

(4) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(5) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(6) The stability of the family unit of the parents;

(7) The mental and physical health of the parents;

(8) The home, school and community record of the child;

(9) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(10) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and

(11) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

(d) If the parents are not actually spending substantially equal intervals of time with the child and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:

(1) The relocation does not have a reasonable purpose;

(2) The relocation would pose a threat of specific and serious harm to the child which outweighs the threat of harm to the child of a change of custody; or

(3) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

The first finding that the trial court must make in order to properly apply the Relocation Statute is the relative amount of time each parent actually spends with the child. Depending on the answer to that question, either subsection (c) or subsection (d) of the Relocation Statute governs the standard to be applied. As set out above, subsection (c) governs situations where parents "are actually spending substantially equal amounts of time with the child," and states that in such cases "[n]o presumption in favor of or against the request to relocate with the child shall arise." In this scenario, the court makes its determination based upon the best interests of the child and those factors set out in the statute.

Subsection (d) applies "[i]f the parents are not actually spending substantially equal intervals of time with the child, and the parent spending the greater amount of time with the child proposes to relocate with the child...." This section is more favorable to the relocating parent than is subsection (c) because it directs the trial court to allow the relocation unless one or more of the three criteria set out above is met.

Tennessee courts have not provided bright-line rules for determining whether parents are spending "substantially equal" custodial time with their children. However, this Court , in *Collins v. Coode*, No. M2002-02557-COA-R3-CV, 2004 WL 904097 (Tenn. Ct. App. April 27, 2004), outlined certain factors to be considered in determining whether parents are spending substantially equal amounts of time with their children, to wit:

> (1) the terms of the applicable custody and visitation orders,
> (2) the number of days each parent has actually spent with the child
> or children,
> (3) whether the parents are using the full amount of residential time
> provided them,
> (4) the length of the period during which the comparison of
> residential time is being made, and
> (5) the particular exigencies of the parent's circumstances.

The *Collins* Court went on to discuss the time period that the court should consider in applying these factors:

> When the circumstances permit, courts should use a twelve-month
> period to determine the amount of time parents are actually spending
> with their children. Examining the twelve consecutive months
> immediately preceding the hearing mitigates the skewed statistical
> results of shorter comparison periods and enables the courts to factor
> in summer vacations, holidays, and other extended visitation periods
> that are not evenly distributed throughout the year. However, in
> cases...in which a twelve-month comparison is not possible or
> feasible, the courts should use the longest possible period of time.

***Collins v. Coode***, 2004 WL 904097 at *3.

Despite these guidelines, custody decisions, by their nature, are inherently fact driven inquiries. As such, and since this case was tried by the court sitting without a jury, we will review the case ***de novo*** upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. ***See*** Tenn. R. App. P. 13(d).

Father first asserts that the trial court erred in its "insistence upon a numerical percentage rather than upon a reasonable statutory construction of 'substantially equal'." As discussed above, there is no bright-line rule in Tennessee concerning the statutory construction of the words "substantially equal." Since no concrete perimeters are outlined in either the statute, or in the case law bearing on this issue, we cannot say that the trial court erred in basing its decision on the numbers.

It is undisputed that the MDA entered into by these parties and adhered to until 1999 or 2000, when The child entered first grade, gave Father 105 nights per year (or 28.7% of the parenting time) with the child and gave Mother 260 nights per year (or 71.3% of the parenting time). The trial court did not stop its inquiry with these figures, however, but looked at the three or four year period in which Mother allowed Father more visitation than the MDA outlined. The parties agree that, during the expanded visitation, Father was spending five (5) nights out of fourteen (14) nights every two weeks with the child. This equates to Father spending 35.7% of the time with the child and Mother spending 64.3% of the time with the child. We cannot say that the trial court's abused its discretion in considering these numerical values. Nor can we conclude that the evidence preponderates against the trial court's finding that these parties do not exercise substantially equal parenting time with the child.

Father next asserts that the trial court erred as a matter of law in relying on ***Aaby v. Strange***, 924 S.W.2d 623 (Tenn. 1996), rather than on the Parental Relocation Statute. Although the trial court refers to the case of ***Aaby v. Strange,*** the trial court and the parties were in agreement that the Relocation Statute supercedes prior case law with regard to parental relocation issues. Even though the trial court referred to ***Aaby v. Strange***, the record does not support a conclusion that ***Aaby v. Strange*** was the sole basis for the trial court's analysis, to wit:

> THE COURT: Abbey [sic] v. Strange. And I mean, there is an arena for the best interest considerations, **but it is only after you've gotten past the standard that Judge Daughtrey set and equality of parenting time** because, otherwise, if we obliterate the lines there, then we–from what I'm understanding you to argue now, basically, abandon that opinion and just look at best interest issues.
>
> *                          *                          *

So based upon the factors that the Court has discussed, it would be my determination that the undisputed record of time would not result in a substantial amount of time within the meaning of Abbey [sic] v. Strange **or the statute**.

(Emphasis added).

From the comments of the trial court, and the record as a whole, it appears that the trial court did apply the correct standard in this matter. The trial court specifically states that it is only after the equality of parenting time question is answered that the best interest inquiry proceeds. As discussed *supra*, this analysis is in direct line with the Relocation Statute and, consequently, we cannot say that the trial court erred.

Father next relies upon the California Supreme Court case of ***Navarro v. Lamusga***, No. S107355, 2004 WL 906302 (Cal. April 29, 2004) in his contention that the trial court failed to discern public policy considerations that mandate a liberal construction of the "substantially equal" term. The *Navarro* case concerned a trial court's order that primary custody of two minor children would be transferred from their mother to their father if she moved to Ohio. In his brief, Father concedes that *Navarro* "does not sort out parents who spend 'substantially equal' time with their children from those who may not, as the Tennessee statute mandates," but asserts that the case is persuasive in recognizing that:

> Even if the custodial parent has legitimate reasons for the proposed change in the child's residence and is not acting simply to frustrate the non-custodial parent's contact with the child, **the court may still consider whether one reason for the move is to lessen the child's contact with the non-custodial parent** and whether that indicates, when considered in light of all the relevant factors, that a change in custody would be in the child's best interests.

(Emphasis supplied by Appellant).

As discussed above, in 1998, Tennessee enacted the Relocation Statute, which governs the relocation of parents in this State. There have also been numerous Tennessee cases addressing the issues surrounding parental relocation. While the *Navarro* case considers as a factor "[t]he likely impact of the proposed move on the non-custodial parent's relationship with the children" in determining "whether the move would cause detriment to the children," this Court has addressed the same issue in ***Connell v. Connell***, No. 03A01-9808-CV-00282, 2000 WL 122204 (Tenn. Ct. App. Jan. 25, 2000) as follows:

> Although we are mindful that such a move may be disruptive to the children, we join the Supreme Court's observation that [a] move in any child's life, whether he or she is raised in the context of a one or

two parent home, carries with it the potential of disruption; such common phenomena–both the fact of moving and the accompanying distress–cannot constitute a basis for the drastic measure of a change in custody.

Furthermore, this Court, in *Collins v. Coode*, No. M2002-02557-COA-R3-CV, 2004 WL 904097 (Tenn. Ct. App. April 27, 2004), specifically states that "Moving is the sort of 'specific harm' contemplated by Tenn. Code Ann. § 36-6-108(d)(2). Moving is a fact of life for many children, those with married parents as well as those whose parents are divorced." *Id*. at note 14. As in the *Collins* case, there is no evidence in this record to suggest that Ms. Bulick's moving will "pose a threat of specific harm" to the child.

Having found that the trial court did not err in its determination that the parties were not spending substantially equal time with the child, T.C.A. § 36-6-108(d) is applicable. Consequently, the burden shifted to Father to prove one of the three factors set forth in T.C.A. § 36-6-108(d), i.e. that (1) the relocation does not have a reasonable purpose; (2) the relocation would pose a threat of specific and serious harm to the child which outweighs the threat of harm to the child of a change of custody; or (3) the parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child. Here, Mother's proposed move has a reasonable purpose in that it is based upon her husband's promotion, which required a relocation to East Tennessee. *See, e.g., Schremp v. Schremp*, No. No. W1999-01734-COA-R3-CV, 2000 WL 1839127 (Tenn. Ct. App. Dec. 7, 2000).

As discussed above, there is no proof in this record that the relocation would pose a risk of harm to the child. Father testified that, although these parties sometimes differ on their decisions for the child, Mother was not unfit to parent. Concerning the risk of harm to the child, Father alleges only that separating the child from her community, school, and family may cause problems. Both the *Collins* and *Connell* Courts, as noted above, have stated that the upheaval of moving, in and of itself, "cannot constitute a basis for the drastic measure of a change in custody." *Collins* at *4. Consequently, this record does not support a finding that there is risk of substantial harm to the child arising from the relocation alone.

Finally, there is no indication in this record that Mother's proposed relocation is in any way for the vindictive purpose of separating Father from the child. Thus, Father has not carried his burden of proof, under the Relocation Statute, to prohibit Mother from relocating and the trial court did not err in allowing that relocation.

## Guardian Ad Litem

Father contends that the trial court erred in denying his Motion for Appointment of Guardian Ad Litem to represent the child in this matter. We disagree. Concerning the appointment of a Guardian ad Litem in cases involving child custody and visitation, the legislature has recently enacted T.C.A. § 36-6-112 (Supp. 2004), which reads, in relevant part, as follow:

(b) In any case involving child custody and visitation in which a judge, **in the judge's discretion**, appoints a guardian ad litem, Rule 40 of the Tennessee Rules of the Supreme Court regarding the role of the guardian ad litem shall be followed as applicable to the case.

(Emphasis added).

Rule 40 of the Tennessee Rules of the Supreme Court defines a Guardian ad Litem's role as follows:

(1) "Guardian ad litem" is a lawyer appointed by the court to advocate for the best interests of a child and to ensure that the child's concerns and preferences are effectively advocated.

The trial court's action in denying Father's request for the appointment of a Guardian ad Litem must be tested by an abuse of discretion standard. As discussed above, based upon the trial court's ruling that these parties were not spending substantially equal parenting time with the child, § 36-6-108(c) is not triggered and, therefore, the trial court did not reach a best interest analysis. Rather, § 36-6-108(d) is applicable and relocation is allowed unless one of the three criteria discussed above is met. Had the trial court properly held that the parties were spending substantially equal parenting time with the minor child, then the trial court may have, in its discretion, appointed a Guardian ad Litem to aid the court in its best interest analysis. However, the fact that the trial court did not reach this analysis under the statute, the fact that there were no allegations of abuse or neglect, and the fact that there was no evidence that the relocation would substantially harm the child indicates that the trial court did not abuse its discretion in declining to use a Guardian ad Litem in this matter.

For the foregoing reasons, we affirm the Order of the trial court. Costs of this appeal are assessed against the Appellant, Richard Lee Thompson, Jr., and his surety.

 

 

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.